**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAUSCHENBERGER INNOVATIONS GMBH | : | Civil No. 1:24-CV-02175 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| YANPING WU and CHINESE JOHN DOE #2 CO. LTD, d/b/a TOOLIOM | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

Plaintiff Rauschenberger Innovations GmbH ("RIG") brings a copyright infringement claim against Defendants Yanping Wu ("Wu") and Chinese John Doe #2 Co. Ltd. d/b/a Tooliom ("Tooliom") (collectively, "Defendants"). (Doc. 16, ¶¶ 18–39.) Defendants move to dismiss RIG's claim. (Doc. 46.) For the reasons explained herein, the court will deny Defendants' motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

RIG is a "family-owned business that makes high-quality, innovative mechanical products in Germany for sale worldwide." (Doc. 16, ¶ 2.) RIG sells its "flagship product," the Clax Cart, on Amazon.com ("Amazon"). (*Id.* ¶ 3.) RIG began selling the Clax Cart on Amazon in Europe around 2015, and an authorized reseller started selling the Clax Cart on Amazon in the United States around 2017.

(*Id.* ¶¶ 19–20.)  RIG started selling the Clax Cart in the United States on its own around 2021.  (*Id.* at 20.)

RIG owns "exclusive rights" to United States Copyright Registration No. VAu 1-534-268 ("the copyright").  (*Id.* ¶ 4.)  The Copyright Office issued the copyright registration certificate paired with that copyright for "a Group of Unpublished Photographs" pursuant to 37 C.F.R. § 202.4(j).  (Doc. 16-1, p. 2.)  The copyright protects a collection of photographs of the Clax Cart and its component pieces ("the photos").  (*Id.*)[1]  RIG began using the photos in its Amazon listings around 2017.  (Doc. 16, ¶ 21.)  RIG also filed an application, which is still pending, for a United States copyright registration "relating to the design of its Clax Cart."  (*Id.* ¶ 6.)

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF headers.

The court normally may not consider "matters extraneous to the pleadings" when ruling on a motion to dismiss for failure to state a claim.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  But "a limited exception exists for documents that are *integral to or explicitly relied* upon in the complaint."  *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 82 n.4 (3d Cir. 2011) (quoting *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010)).  And for a copyright infringement claim, "[t]he copyrighted and allegedly infringing works will necessarily be integral to an infringement complaint and are therefore properly considered under Rule 12(b)(6)."  *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018).  Here, RIG attached several exhibits to its amended complaint and cites each of them in the complaint itself.  (Doc. 16, ¶¶ 4, 11, 16(a), 29, 35.)  So the court considers those exhibits in analyzing the complaint's sufficiency.

Defendants are located in China.  (*Id.* ¶¶ 13, 27.)  RIG alleges that Defendants[2] manufacture "low-quality knock-offs of [RIG's] Clax Cart," and that Defendants' products "mimic the design and trade dress" of the Clax Cart.  (*Id.* ¶ 7.)  RIG alleges that the photos in Defendants' Amazon listings "closely mimic" the photos protected by RIG's copyright and thus infringe that copyright.  (*Id.* ¶ 8.)

In November and December 2024, RIG sent Digital Millenium Copyright Act ("DMCA") takedown notices to Amazon.  (*Id.* ¶ 9.)  The notices asked Amazon to remove the allegedly infringing photos from Defendants' Amazon listings.  (*Id.*)  Amazon removed the photos from Defendants' listings and notified Defendants.  (*Id.* ¶ 10.)  Defendants filed a DMCA counternotice with Amazon. (*Id.* ¶ 11; Doc. 16-2, p. 2.)  The counternotice identified Wu as the seller on Amazon. (*Id.*)

RIG sued Defendants for copyright infringement on December 16, 2024. (Doc. 1, ¶¶ 1–34.)  Defendants moved to dismiss RIG's claim on February 6, 2025, but the court struck that motion because Defendants did not include a certification of conference.  (Docs. 9, 12.)  RIG then filed an amended complaint on February 20, 2025.  (Doc. 16.)  Defendants moved to dismiss the amended complaint and

---

[2] In the section of its amended complaint listing the parties to the action, RIG only identifies Tooliom as a Defendant.  (Doc. 16, ¶ 13.)  The amended complaint frequently refers to a singular defendant, and only briefly mentions Wu as the seller who filed a DMCA counternotice with Amazon.  (*Id.* ¶ 11.)  Nonetheless, the court assumes that RIG asserts its copyright infringement claim against both Defendants and that the factual allegations in the complaint apply to both Wu and Tooliom.

filed a brief in support.  (Docs. 18, 19.)  RIG filed a brief in opposition to that motion, and Defendants filed a reply.  (Docs. 21, 22.)  The court ordered RIG to show cause why Defendants had not waived service, denied the motion to dismiss without prejudice, and ordered RIG to file monthly status reports informing the court of its efforts to serve Defendants.  (Docs. 28, 32).  Defendants confirmed they had been served, and the court granted them leave to file a renewed motion to dismiss.  (*See* Doc. 38, pp. 1–2; Docs. 41, 42, 43, 44, 45.)

Defendants filed the instant motion to dismiss and a brief in support on September 30, 2025.  (Docs. 46, 47.)  RIG filed a brief in opposition on October 14, 2025, and Defendants filed a reply on October 29, 2025.  (Docs. 49, 51.)  RIG filed a sur reply with the court's permission, Doc. 56, and the court denied Defendants' request to file a reply to the sur reply.  (Doc. 58.)  Therefore, the motion is ripe for disposition.

**JURISDICTION AND VENUE**

RIG brings a copyright infringement claim, so the court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338.  Venue is proper because Defendants are not residents of the United States and may therefore be sued in any judicial district.  28 U.S.C. § 1391(c)(3).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3rd Cir. 2020).

## DISCUSSION

Defendants raise two primary arguments in support of their motion to dismiss. First, they argue that Plaintiff's copyright registration is invalid. (*See* Doc. 47, pp. 9–15.) Second, they claim RIG fails to identify elements of original

5

expression in the photos, and that if those elements exist, Defendants did not copy them in their Amazon listing photographs.  (*See id.* at 15–28.)  The court will summarize the legal standards applicable to these arguments before addressing their merits.

### A. Copyright validity and the elements of a copyright infringement claim

To sue for copyright infringement and recover certain categories of statutory damages or attorney's fees, a plaintiff usually needs a properly registered copyright.  17 U.S.C. § 411(a); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) ("[A]lthough an owner's rights exist apart from registration . . . registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights . . . .")[3]  A plaintiff properly registers a copyright by applying to the Register of Copyrights and providing specific information.  *Id.* § 409.  "Some of this information is purely factual, but some of it incorporates legal conclusions." *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 181 (2022).  If the Register of Copyrights decides the work is copyrightable and the other application requirements are met,

---

[3] At least one exception to this general rule exists for "an action brought for a violation of the rights of the author under section 106A(a)."  17 U.S.C. § 411(a).  Neither party argues that the general rule of needing to register a copyright before filing suit does not apply here.  *See* Doc. 47, pp. 6–28; Doc. 49, p. 17 (discussing copyright validity under § 411(b)(1).)

they "register the claim and issue to the applicant a certificate of registration under the seal of the Copyright Office."  17 U.S.C. § 410(a).

Incorrect information in the certificate of registration does not invalidate the copyright registration unless: "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  *Id.* § 411(b)(1).  As to the first invalidation requirement, "[l]ack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration."  *Unicolors, Inc.*, 595 U.S. at 182.  This means that a copyright application can include inaccurate facts or incorrect interpretations and applications of the law, and so long as the applicant did not know they were providing false facts or misapplying the law, the resultant copyright registration remains valid.  *Id.* at 185 (noting that the word "knowledge" in 17 U.S.C. § 411(b)(1)(A) means "actual, subjective awareness of both the facts and the law.")

As to the second invalidation requirement, if a party alleges that the copyright registration certificate contains inaccurate information, the court "shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(2).  "The Register's response is advisory rather than binding."  *Real World Media LLC v. Daily Caller, Inc.*, 744 F. Supp. 3d 24,

41 (D.D.C. 2024) (citing *Palmer/Kane LLC v. Gareth Stevens Publ'g*, Civ. A. No. 15-7404, 2017 WL 3973957, at *10 n.7 (S.D.N.Y. Sept. 7, 2017)).

When the copyright registration requirement is satisfied, a plaintiff must still plead two elements to survive a motion to dismiss. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 66–67 (3d Cir. 2018). They are "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Am. Soc'y for Testing & Materials v. UpCodes, Inc.*, --- F.4th ---, No. 24-2965, 2026 WL 935309, at *3 (3d Cir. Apr. 7, 2026).[4]

As to the first element, a certificate of copyright registration is "prima facie evidence of a valid copyright" so long as it is made before or within five years of

---

[4] Contrary to RIG's description in its brief in opposition, a plaintiff must only plead copying, not *unauthorized* copying to satisfy the second element. *McGraw-Hill*, 909 F.3d at 66–67; Doc. 49, p. 8 (quoting *Winstead v. Jackson*, 509 F. App'x 139, 143 (3d Cir. 2013)). It is true that recent and precedential Third-Circuit opinions include the "unauthorized" factor in their recitation of the elements of a copyright infringement claim. *See Tanksley*, 902 F.3d at 173 (quoting *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)); *Am. Bd. of Internal Med. v. Rushford*, No. 24-3012, 2026 WL 125193, at *4 (3d Cir. Jan. 16, 2026) (same). But in *McGraw-Hill*, the Third Circuit concluded that the "use of the word 'unauthorized'" in previous opinions "was erroneous." 909 F.3d at 67. Despite this holding, the Third Circuit again added "unauthorized" to the second element in *Pyrotechnics Management, Inc.* without citing *McGraw-Hill*. 38 F.4th 331, 335 (3rd Cir. 2022); *but cf. Am. Soc'y for Testing & Materials*, 2026 WL 935309, at *3 (omitting "unauthorized"). Other courts in this district have recognized the discrepancy and applied the recitation of the elements from *Feist*, 499 U.S. at 361, and the court does the same here. *See Adlife Mktg. & Commc'ns Co. v. Ad Post Graphics Media Mktg., Inc.*, 708 F. Supp. 3d 567, 574 n.2 (M.D. Pa. 2023). Even if authorization remained an element of a copyright infringement claim, RIG specifically alleges that Defendants copied its photos without authorization. (*See* Doc. 16, ¶ 35.)

the work's publication.  17 U.S.C. § 410(c); *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 335 n.3 (3d Cir. 2022); *Warner Bros. Recs. Inc. v. Walker*, 704 F. Supp. 2d 460, 465 (W.D. Pa. 2010) (finding, in ruling on a motion for summary judgment, that there were no disputes of material fact on the first element of the plaintiff's copyright claim because the defendant did not dispute the plaintiff's ownership of the copyrights or the validity of the certificates of registration the plaintiff produced); *see Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 299 n.18 (3d Cir. 2004).  That presumption may be rebutted, for example, on a showing that the work the copyright protects is not subject to copyright protection.  *Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 392 (D. Del. 2025), *motion to certify appeal granted*, No. 1:20-CV-613, 2025 WL 1488015 (D. Del. May 23, 2025) ("So even if [the plaintiff] gets a presumption of validity because of the copyright registrations, [the defendant] could rebut the presumption by showing that the works are not original.")

The second element has two "components" or sub-elements: "(a) actual copying and (b) material appropriation."  *Grondin v. Fanatics, Inc.*, No. 23-2149, 2024 WL 5231194, at *1 (3d Cir. Dec. 27, 2024) (citing *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018)).  "Actual copying focuses on whether the defendant did, in fact, use the copyrighted work in creating his own.  If the defendant truly

created his work independently, then no infringement has occurred, irrespective of similarity." *Tanksley*, 902 F.3d at 173. A plaintiff may use direct evidence or circumstantial evidence of "access and similarity" to prove actual copying, and in determining actual copying, a fact finder "may consider any aspect of the works that supports an inference of copying, even elements that are incapable of copyright protection." *Id.*

After establishing actual copying, the plaintiff must prove unlawful or material appropriation by showing that the alleged infringer's work is "substantially similar to the protected elements of the copyrighted work." *Id.* at 174. "[S]ubstantial similarity asks whether 'a "lay-observer" would believe that the copying was of protectible aspects of the copyrighted work.'" *Id.* at 174 (first quoting *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 561–62 (3d Cir. 2002); then quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)). To answer that question, "the trier of fact performs a side-by-side comparison of the works and, excluding any unprotectable elements, assesses whether the two works are substantially similar." *Id.*

Substantial similarity is usually an "extremely close question of fact," and answering it even at the summary judgment stage "has traditionally been disfavored." *Id.* at 171 (quoting *Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 n.6 (9th Cir. 1983)). But if no reasonable jury could find that

10

two works are substantially similar, summary judgment in favor of the defendant,

or even dismissal of the claim pursuant to Federal Rule of Civil Procedure 12(b)(6)

if the question can be decided on the facts as pleaded, is appropriate.  *Id.* (first

quoting *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296–97 (D.C. Cir.

2002); then quoting 3 William F. Patry, *Patry on Copyright* § 9:86.50 (Mar. 2018

update)); *see Walker v. Kemp*, 587 F. Supp. 3d 232, 248 (E.D. Pa. 2022)

(dismissing the plaintiff's copyright infringement claim with prejudice at the

motion to dismiss stage).

Finally, because it is central to the arguments presented here, the court

addresses the originality or authorship requirement separately from the two

elements discussed above.[5]  *Dam Things*, 290 F.3d at 561–64 (describing and

---

[5] Courts have characterized originality as part of both the first and second elements of a copyright infringement claim depending on the arguments presented.  *Compare Feist*, 499 U.S. at 361 *with Thomson Reuters*, 765 F. Supp. 3d at 392.  For example, in *Feist*, the defendant "appear[ed] to concede" that the plaintiff's material was subject to a valid copyright because it contained some "forward text" and other "original material."  499 U.S. at 361.  Therefore, the court held that the first element was not at issue.  *Id.*  Instead, the court had to determine whether the defendant had copied any original element of the protected work, so it addressed the originality requirement in its discussion of the second element.  *Id.*  The court in *Thomson Reuters*, on the other hand, addressed originality as part of the first element.  765 F. Supp. 3d at 392–93.  There, the court examined whether the work at issue was original enough to qualify for copyright protection in the first place.  *Thomson Reuters*, F. Supp. 3d at 392–93.  The court asked whether the defendant had rebutted the presumption of reliability conferred by the plaintiff's copyright registration certificates by showing that the copyright did not protect any original material, making it invalid.  *Id.*  So, in that situation, originality was a first-element, not a second-element, issue.  Here, the element under which the court addresses the originality requirement matters little, because Defendants appear to make both types of arguments.  (*See* Doc. 47, pp. 18–28.)  If Defendants' arguments are correct and RIG failed to plead that either (1) its copyright protects any original material or (2) Defendants did not copy any original elements of RIG's photos, then RIG has failed to plead a claim for copyright infringement.  *See Feist*, 499 U.S. at 361.

distinguishing the "originality test" set forth in *Feist* from the question of infringement and similarity for derivative works). "To qualify for copyright protection, a work must be original to the author," and originality "is a constitutional requirement." *Feist*, 499 U.S. at 345–46. A work is original if it "was independently created by the author (as opposed to copied from other works)," and "possesses at least some minimal degree of creativity." *Id.* at 345. "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." *Id.* Copyright validity is a question of law, *Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 219 (3d Cir. 2019), but gauging originality involves determinations of fact.[6] *See Mon Cheri Bridals, Inc. v. Wen Wu*, 383 F. App'x 228, 234 (3d Cir. 2010) ("The jury properly concluded that the works for which Mon Cheri sought copyrights were sufficiently original"); *Thomson Reuters*, 765 F. Supp. 3d at 392–93 (explaining that, although copyright validity is a question of law, whether a specific aspect of the copyrighted material was original presented factual issues); *Schiffer Publ'g, Ltd. v. Chron. Books, LLC*, 350 F. Supp. 2d 613, 617 (E.D. Pa. 2004) (denying summary judgment because Defendants "met their burden of raising material factual disputes concerning the originality of

---

[6] *See also Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, No. 1:20-CV-613, 2025 WL 1488015, at *1 (D. Del. May 23, 2025) (certifying, as a question of law for interlocutory appeal: "How much 'creative spark' is legally required for originality?" But recognizing that "originality can involve fact-heavy analysis inappropriate for interlocutory appeal").

Plaintiffs' photographs" when attempting to rebut the presumption of ownership of a valid copyright conferred by a certificate of registration); 2 William F. Patry, *Patry on Copyright* § 3:39 (Mar. 2026 update) ("As the vast majority of courts to have examined the issue have correctly held, originality is a question of fact") (collecting cases).

With these principles in mind, the court addresses the parties' arguments.

**B. The court cannot determine, at this stage, whether RIG's copyright registration certificate contains inaccurate information or whether RIG knowingly included incorrect information in its copyright registration application.**

Defendants first argue that the court should dismiss RIG's amended complaint because RIG's copyright registration is invalid.  (Doc. 47, pp. 9–15.)  It claims that RIG knowingly included inaccurate information in its copyright application and had the Register of Copyrights known that this information was false, they would have denied RIG's application and not issued the certificate of registration attached to the amended complaint.  (*Id.*)  Accordingly, RIG cannot sue to enforce its copyright.  (*Id.*); *see Fourth Est. Pub. Benefit Corp.*, 586 U.S. at 301.

Defendants' argument begins with the premise that, when RIG "incorporated" the photos into its Clax Cart Amazon listings in 2017, it "published" those photos for the purpose of copyright registration.  (Doc. 47, pp. 9–14.)  The Copyright Act defines the term "publication" as:

13

> [T]he distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101.  Relying on this definition and guidance from the United States Copyright Office, Defendants claim an Amazon user could download the photos from RIG's listings, so RIG published the photos when it placed them in its Amazon listings.  (Doc. 47, pp. 10–14.)  They urge the court to take judicial notice of RIG's current Clax Cart Amazon listing, which they claim allows users to download photos of the product.  (*Id.* at 14 n.2.)

Defendants contend that RIG applied for and received a copyright registration for "unpublished" photographs in 2024, even though RIG previously published those photos by posting them to Amazon.  (*Id.* at 11; Doc. 16-1, p. 2.)  Thus, the copyright registration certificate contains inaccurate information about whether the photos were published.  (Doc. 47, p. 11.)

Defendants claim RIG knew of this alleged inaccuracy because the complaint alleges RIG posted the photos to its Amazon listings in 2017.  (*Id.* at 13.)  They argue this allegation "is a judicial admission that binds [RIG] on this motion and concedes a material fact in favor of dismissal."  (*Id.*)  In their reply brief, Defendants argue that RIG was at least "willfully blind" in failing to understand its Amazon postings resulted in publication of the photographs because

14

RIG's counsel, who "prosecuted the copyright application," is an experienced copyright law practitioner and would have known that the photos had been published.  (Doc. 51, pp. 8–10.)

Moreover, it argues that applying for a copyright for unpublished photos when those photos were previously published is "a grave error that requires invalidation of a copyright registration" and that the Register of Copyrights would have refused registration had it known that the pictures were previously published. (Doc. 47, pp. 11–12.)  They argue this is an especially serious error because the application for copyright registration RIG completed was specifically designed for unpublished works.  (Doc. 51, p. 7.)  Therefore, in Defendants' view, both prongs of § 411(b) are satisfied, RIG's certificate of registration is invalid, and RIG cannot rely on the presumption of validity normally afforded to registration holders. (Doc. 47, p. 15.)

In response, RIG argues that it has not "sold, transferred, rented, leased or loaned" any of the photos to the public, so it has not published them.  (Doc. 49, p. 15.)  RIG claims that, since merely displaying a work to the public does not constitute publication, posting the photos to Amazon listings did not result in the publication of the photos.  (Doc. 49, p. 15 (quoting U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1008.3(B) (3rd ed. 2021).)  It notes that the question of whether a work posted online is therefore published

15

requires a complex analysis and urges the court not to answer it at the motion to dismiss stage. (*Id.* at 17.) RIG also claims that it did not have subjective awareness of any inaccurate information in its copyright registration application, so its copyright registration remains valid. (*Id.* at 17–18.)

In its sur-reply brief, RIG claims Defendants' arguments as to the publication status of the photos go too far beyond the allegations contained in the complaint, are factually incorrect, and ask the court to make factual determinations that are improper at the motion to dismiss stage. (Doc. 56, pp. 1–3.) Moreover, it claims that should the court find that RIG knowingly included inaccurate information in its copyright registration application, it should not automatically dismiss the complaint. (*Id.* at 3.) Instead, it argues the court should refer the question of whether that inaccurate information is material to the Register of Copyrights, as required by 17 U.S.C. § 411(b)(2). (*Id.* at 3–4.)

The court will deny Defendants' motion to dismiss on this basis for several reasons. First, the court cannot determine, from the facts alleged in the amended complaint, that RIG's copyright registration contains false information. Defendants claim it is not true that RIG's photos were unpublished when it applied for copyright registration because RIG admitted that it published the photos by posting them on Amazon. (Doc. 47, p. 11.) But RIG did not admit that it

16

"published" the photos in 2017, because posting a work on the internet does not always result in the publication of that work.  (*Id.* at 11–13; Doc. 51, p. 8.)

RIG alleges that it incorporated the photos into its Amazon listings in 2017. (Doc. 16, ¶ 21.)  Only for the purpose of resolving the immediate disagreement, the court will accept Defendants' interpretation of the Copyright Act's definition of "publication" and the Copyright Office's guidance as to when a work is published. (*See* Doc. 47, pp. 11–15 (arguing that RIG published the photos on Amazon because users could download the photos from its postings)).  In order to determine that RIG "published" the photos by posting them on Amazon, the court would need to determine whether between 2017 and 2024 Amazon allowed users to download photos in the manner Defendants describe.  *See Brunson v. Cook*, No. 3:20-CV-01056, 2023 WL 2668498, at *8 (M.D. Tenn. Mar. 28, 2023) (finding, on a motion to refer the question of materiality to the Register of Copyrights, that the defendants "identified facts on the record" showing that a work was published because the website on which it was posted allowed users to download content). The amended complaint and the attached documents do not allege that the photos became downloadable when RIG posted them to Amazon, nor do they explain whether users can download photos from Amazon.  (*See* Doc. 16, ¶¶ 1–39.)

To get around this lack of facts in the operative pleading, Defendants urge the court to take judicial notice of RIG's current Amazon product listing, which

they claims allows users to download the photos. (Doc. 47, p. 14.) The court will not, at this stage, take judicial notice of those postings. But even if it did, it would not be able to decide the publication question. That is because RIG's *current* Amazon postings alone cannot demonstrate whether users could download the pictures from its postings between 2017, when RIG alleges it first incorporated the photos into its Amazon listings, and 2024, when RIG received its copyright registration. (*See id.*; Doc. 16, ¶ 21; Doc. 16-1, p. 2.) Thus, it is not clear at the motion to dismiss stage that the copyright contains inaccurate information.[7]

Second, contrary to Defendants' arguments, the complaint does not allege that RIG knew it included inaccurate information in its copyright registration application. (*See* Doc. 16, ¶¶ 20–22; Doc. 47, p. 13.) At most, it alleges that RIG knew it had posted the photos to Amazon. (Doc. 16, ¶¶ 20–22.) But as explained above, determining whether posting a work online amounts to publishing that work for copyright purposes involves a fact-based analysis the court is not able to conduct at the motion to dismiss stage in this instance. Defendants urge the court to "impute" knowledge of inaccurate legal conclusions in the copyright application to RIG based on its copyright counsel's firm biography webpage. (Doc. 51, pp. 9–

---

[7] Defendants argue that even if the court declines to invalidate RIG's copyright registration, RIG published the photos more than five years before it copyrighted them, so the registration does not confer "prima facie evidence of the validity of the copyright." (Doc. 47, pp. 15–16 (quoting 17 U.S.C. § 410(c).) But again, Defendants' argument depends on the conclusion that the photos were published, 17 U.S.C. § 411(b), which the court is not able to determine in this case at the motion to dismiss stage.

10.)  They cite *Brunson* in support of this argument, but in that case, the court

examined a copyright attorney's deposition testimony about his specialization and

the materials he reviewed in applying for registration to assess his subjective

knowledge, not simply his firm webpage.  2023 WL 2668498 at \*16; (Doc. 51, p.

9.)  Without factual context, the court cannot determine that RIG had actual,

subjective awareness of its alleged mistakes of fact or law based on a review of the

law firm's website alone.  *Unicolors, Inc.*, 595 U.S. at 182.

Inaccurate information in a copyright registration certificate does not

invalidate the copyright unless the copyright holder knowingly included that

information in its application and, had the Register of Copyrights known about the

inaccurate information, they would have denied the application.  17 U.S.C. §

411(b)(1).[8]   Here, the allegations in the amended complaint do not establish that

---

[8] Additionally, 17 U.S.C. § 411(b)(2) states that "[i] n any case in which inaccurate information
described under paragraph (1) is alleged, the court shall request the Register of Copyrights to
advise the court whether the inaccurate information, if known, would have caused the Register of
Copyrights to refuse registration."  But "before making a referral to the Copyright Office under §
411(b)(2), a district court may require a litigant to 'demonstrate that (1) the registration
application included inaccurate information; and (2) the registrant knowingly included the
inaccuracy in his submission to the Copyright Office.'"  *Pyrotechnics Mgmt., Inc. v. XFX
Pyrotechnics LLC*, No. 19-CV-00893, 2021 WL 2981798, at \*1 (W.D. Pa. July 15, 2021)
(denying defendant's motion to issue a request to the Register of Copyrights about the
materiality of allegedly incorrect information in a copyright registration application) (quoting
*DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013)); *see Schenck v.
Orosz*, 105 F. Supp. 3d 812, 818 (M.D. Tenn. 2015) (recognizing that immediately referring the
question of materiality to the Copyright Office any time a litigant alleges incorrect information
creates the potential for abuse early in litigation); *see Beatriz Ball, L.L.C. v. Barbagallo Co.,
L.L.C.*, 40 F.4th 308, 316 n.5 (5th Cir. 2022) ("The statute does not require the Register to make

19

both prongs of § 411(b)(1) are met, so the court will not dismiss Plaintiff's claim on the basis of an invalid copyright registration. Fed. R. Civ. P. 12(b)(6). It is true that the court may take judicial notice of matters of public record. *See McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009). But considering the material Defendants provide does not decide the issue, and the court will wait for a complete factual record to answer the legal questions involved in this specific dispute. *See Real World Media*, 744 F. Supp. 3d at 35 (recognizing that the questions of publication "are not so clear as [the defendant] makes out," the defendant's arguments relied on an "extra-complaint record [the defendant] itself crafted" and noting that other cases decided the same issue on summary judgment).[9]

### C. RIG adequately pleads that its photographs are original and that Defendants copied their original elements.

Defendants' next two arguments focus on the originality requirement. First, they argue that the amended complaint fails to plead that the copyright protects

---

materiality determinations even if the misstatements were, as here, made unknowingly.") Defendants do not request that the court refer the materiality issue to the Register of Copyrights, and the court will not do so at this stage because it has not found that Defendants demonstrated knowing inclusion of incorrect information in the registration application. 17 U.S.C. § 411(b)(1); *Real World Media*, 744 F. Supp. 3d at 42–43 (declining to refer the materiality issue to the Copyright Office at the motion to dismiss stage and recognizing widespread acceptance of "a more flexible approach" to § 411(b)(2) among district courts) (collecting cases).

[9] Although the court finds RIG adequately pleads the validity of its copyright at this stage, this does not prevent Defendants from raising the same arguments at a later stage in this case.

original material, so the copyright is invalid despite the registration. (Doc. 47, pp. 18, 21–25; Doc. 51, pp. 12–15.) Second, they argue that even if the photos, as a whole, are subject to copyright protection, they did not copy any of the specific original elements of the photos. (Doc. 47, pp. 18–21, 25–29; Doc. 51, pp. 10–15.)

As to the first argument, Defendants note that "a plaintiff must articulate the elements of creative authorship it has made, even when there is a registration, when it is not apparent from examination of the work what creative expression was authored." (Doc. 47, p. 18.) Defendants emphasize that the Clax Cart's presence in the photos does not satisfy this requirement because the copyright protects the photographs only. (*Id.* at 18–19.) But Defendants' primary point is that the photos fall into a narrow class of uncopyrightable works that are meant only to showcase a product. (*Id.* at 21–25.) They argue that the photos of the Clax Cart are so utilitarian in style, with bright lighting and specific, advertisement-focused angles, that they feature no creative expression at all; their sole purpose is to advertise the Clax Cart's capabilities and properties. (*Id.* at 23–26.) Because copyright protection applies to original works only, the photos cannot be the subject of a copyright registration. (*Id.* at 23–27.)

To the extent RIG alleges its photos include elements of original authorship, Defendants argue it does not explain how those elements are unique and deserving of copyright protection. (*Id.* at 24 (arguing that RIG does not explain what makes

21

the photographs copyrightable because the amended complaint is silent as to "the specific composition, lighting, depth of field or other descriptive feature[s] that purportedly make the Clax photographs original").)  Therefore, RIG's copyright registration is invalid despite the certificate, and its claim should be dismissed.  (*Id.* at 27.)

In response, RIG first notes that a valid copyright registration certificate constitutes prima facie evidence of originality and authorship, and that a work must be only minimally creative to warrant copyright protection.  (Doc. 49, p. 18.)  Next, it argues that it sufficiently pleads that the photos feature elements of creativity unique to the photographer such as composition, camera angle, and position and arrangement of the subject.  (*Id.* at 19.)  Finally, it argues that "basic product photographs intended for use in commercial advertising have consistently been held to have sufficient original, creative authorship to be copyrightable."  (Doc. 49, p. 20 (collecting cases).)

Defendants' second argument focuses on the aspects of the photos RIG alleges Defendants copied.  Defendants note that copyright protection only extends to the original elements of a particular work.  (Doc. 47, pp. 19–21.)  Then, they argue that RIG does identify "the specific copyrightable expression in its photographs that was copied by Defendants . . . ."  (Doc. 47, pp. 27–28; *see* Doc. 51, pp. 13–14.)  In response, RIG argues that it adequately pleads that the photos

22

contain original aspects of authorship and that Defendants copied those aspects. (Doc. 49, pp. 20–21.)

Defendants' arguments can be summarized as follows:  the copyright is invalid because the photos contain no original authorship, and even if they do have original elements, Defendants did not copy those elements.  (*See* Doc. 47, pp. 18–28.)  Defendants' arguments do not warrant dismissal for several reasons.

First, as explained above and accepting all well-pleaded facts in the complaint as true, RIG's copyright is valid and was issued before the photos it protects were published.  (*See* 17 U.S.C. §§ 410(c), 411).  Therefore, at this stage, there is a rebuttable presumption that the photos are sufficiently original to warrant copyright protection.[10]  *Mon Cheri Bridals, Inc.*, 383 F. App'x at 231; *Hanover Architectural Serv., P.A. v. Christian Testimony-Morris, N.P.*, No. CIV. 2:10-5455, 2015 WL 4461327, at *2 (D.N.J. July 21, 2015) ("[A] Certificate from the Copyright Office is prima facie evidence of a valid copyright, and therefore of some original element in the copyrighted work") (collecting cases); *Real World*, 744 F. Supp. 3d at 35 (concluding, on a motion to dismiss and on the question of sufficient authorship and originality, that Defendant failed to rebut the presumption

---

[10] Again, the court's finding that at this stage, the presumption of validity of RIG's copyright applies and has not been rebutted does not prevent Defendants from attempting to rebut that presumption and challenging the validity of RIG's copyright later based on a complete factual record.

of validity conferred by an a certificate of copyright registration); *see Thomson Reuters Enterprise*, 765 F. Supp. 3d at 392 ("[E]ven if [the plaintiff] gets a presumption of validity because of the copyright registrations, [the defendant] could rebut the presumption by showing that the works are not original.")

Second, the amended complaint's allegations clear the low threshold of originality and sufficiently plead that Defendants copied original elements of RIG's photos. Defendants do not appear to challenge whether the photos were "independently created by the author . . . ." *Feist*, 499 U.S. at 345. Instead, they claim the works do not possess "some minimal degree of creativity." *Id.* But "the requisite level of creativity is extremely low; even a slight amount will suffice." *Id.*

Here, RIG alleges that the photos contain the following elements of original authorship: "the composition, camera angle, position and arrangement of the subject, lighting, depth of field, selection of foreground and background elements, and color palette." (Doc. 16, ¶ 36.) These are the elements of photography that courts frequently find to constitute original, and therefore copyrightable, elements of a photograph when they are manipulated to create an original work. *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved"); *Oriental*

24

*Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001), *aff'd in part, appeal dismissed in part sub nom. Oriental Art Printing Inc. v. GS Printing Corp.*, 34 F. App'x 401 (2d Cir. 2002) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, and evoking certain desired expression, as well as other variants"); *Andy Warhol Found. For Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 46 (2d Cir. 2021), *aff'd sub nom. Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) (holding that the "cumulative manifestation" of artistic choices about subject posing, lighting, angles, and other elements that form the "image produced in the interval between the shutter opening and closing" is "what the law ultimately protects").  RIG also alleges that these are the original elements of its photos that Defendants copied in their infringing photos.  (Doc. 16, ¶ 36.)

Defendants argue that these allegations are insufficient to plead elements of originality, and that RIG cannot rely on the depiction of a similar subject to prove copying of aspects of authorship and substantial similarity.  (Doc. 47, p. 24; *see* Doc. 51, pp. 13–14.)  But the court finds, at this stage, that these allegations of originality are sufficient, even when the similar subject is correctly excluded from the originality and substantial similarity analyses.  *See Masquerade Novelty, Inc. v. Unique Indus.*, Inc., 912 F.2d 663, 671 (3d Cir. 1990); *Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 181 (1st Cir. 2013) ("[S]ubject matter that the

25

photographer did not create could be viewed as 'facts' that, like ideas, are not entitled to copyright protection.")[11]

Examining the photos attached to the amended complaint, the court cannot find, at this stage, that those elements of originality are not present in the photos or that the photographer did not make any unique and original choices regarding the potentially creative elements listed above that resulted in an original photograph. (*See* Doc. 16-4, p. 2.)  It also cannot determine that Defendants copied none of those specific elements of the photos in their own photos.  (*Id.*)

Although Defendants point out some differences between their photos and RIG's photos, the amended complaint and its exhibits do not make clear that none of the original elements pleaded by RIG are present in Defendants' photos.  (*Id.*; Doc. 47, p. 26.)  And as explained above, determining originality often involves resolving factual issues about the creative process.  *See Thomson Reuters*, 765 F. Supp. 3d at 392; *Schiffer Publ'g*, 350 F. Supp. 2d at 617.  And so, accepting all facts alleged in the amended complaint as true, construing all reasonable inferences in favor of RIG, and lacking a fully developed factual record, the court cannot

---

[11] Defendants also argue that because RIG alleges that its photo exhibits feature "non-exhaustive examples of Defendants' intentional copying," Doc. 16, ¶ 35, RIG fails to identify which specific works Defendants copied.  (Doc. 47, p. 27.)  But RIG provides those photos as examples and alleges that Defendants are infringing the photographs "covered by the CLAX copyrights." (Doc. 16, ¶ 24.)  The copyright registration certificate contains a list of photos protected by the copyright.  (Doc. 16-1, p. 2.)  Therefore, the court finds RIG identified specific works in its complaint.

conclude that RIG fails to plead that Defendants copied elements of original authorship in RIG's photos. *See Tubio v. Adidas Am., Inc.*, No. CV 22-6424, 2022 WL 19250159, at *3–*4 (C.D. Cal. Dec. 6, 2022) (Declining at the motion to dismiss stage to decide when or to what extent originality is a factual question for the jury, and recognizing that "[u]nlike the situation where a court is conducting a substantial similarity copyright analysis in a Rule 12(b)(6) context, where originality/creativity is/are at issue, the Court cannot be sure that it has all information relevant to that question properly in front of it . . .").

Third, there is a meaningful difference between the district court opinions Defendants cite as finding no originality in product showcase photographs and the situation before the court.  (Doc. 47, pp. 21–24.)  The difference is that most, if not all, of the courts writing those opinions relied on some form of factual record in finding no originality in the photographs before them or were ruling on a motion for preliminary relief.[12]  Defendants may raise arguments relying on the premise

---

[12] *Oriental Art Printing, Inc.*, 175 F. Supp. 2d at 544, 546–47 (deciding a motion for preliminary injunction and motion to dismiss and relying on declarations to determine whether menu photographs were original); *Harner v. Wong Corp.*, No. 1:12-CV-00820, 2013 WL 11549284, at *1 (D.N.M. Oct. 31, 2013) (ruling on a motion for summary judgment); *Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*, 535 F. Supp. 2d 542, 544 (E.D.N.C. 2008) (ruling on a motion for a temporary restraining order and for a preliminary injunction); *see ID Tech LLC v. Toggle Web Media LLC*, No. 20-CV-5949, 2023 WL 2613625, at *5 (E.D.N.Y. Mar. 23, 2023) (noting, in ruling on a motion to dismiss, that copyright infringement claim would "likely fail" as to photographs because of a lack of originality, but dismissing the claim without prejudice because of a failure to adequately plead which works were copied).  Although defendants cite *SMS Group Inc. v. Pharmaaid Corp.* in claiming that RIG fails to demonstrate which aspects of its photos are original, Doc. 47, p. 24, the court in that case held that "[g]iven the presumption of originality, and crediting [the photographer's] representations as to the creative process that went into the

addressed in these opinions after discovery.  *See Fotohaus, LLC v. Advanced Plan for Health, LLC*, No. 3:20-CV-2049, 2021 WL 2690093, at *4 (N.D. Tex. Apr. 20, 2021), *report and recommendation adopted*, No. 3:20-CV-2049, 2021 WL 2688596 (N.D. Tex. June 30, 2021) (recognizing, in discussing *Oriental Art Printing*, that the court "cannot determine, at the pleading stage, if this is another 'rare' case in which the subject of the photograph is so common as to preclude copyright protection" but ultimately recommending dismissal of the claim for failure to plead that the work was creative.)  But at this juncture, the court cannot properly evaluate arguments similar to the ones considered by those courts.

### CONCLUSION

For the reasons explained herein, the court will deny Defendants' motion to dismiss.  An order follows.

> s/Jennifer P. Wilson
> JENNIFER P. WILSON
> United States District Court Judge
> Middle District of Pennsylvania

Dated: April 23, 2026

---

photographs, the Court concludes that the images, broadly speaking, are likely to satisfy the minimal threshold of originality."  No. 23-CV-1777, 2023 WL 6929653, at *4 (E.D.N.Y. Oct. 19, 2023).

28